Cambridge Livingston, Executor, etc., Respondent, *v.* Agnes Murray, Impleaded, etc., Appellant.

The will of M. directed that his residuary estate should be divided equally among his children; the shares of the daughters "to be secured to them for their separate use during their natural lives;" and in case of one dying without issue, so much of her portion "as may remain at the time of her  *  *  *  death" to revert to the surviving children, etc., subject to the right of each daughter to dispose of one-half of her share by will. By another clause he devised his real estate to his executors in trust, to sell and to apply the proceeds as directed in the will. By a clause in a codicil, stated therein to have been intended to make clear any obscurity as to the title of the children, M. gave to each of his children an equal portion; to each of his sons a portion absolutely; to each of his daughters an estate for life; remainder to her lawful issue, subject to her right to dispose of one-half by will, and subject to the power in trust in the executors to sell and convey; and in case of the death of a daughter without issue, such portion of her share as she had not disposed of by will to go to her brothers and sisters. In an action to construe the will and codicil, *held* (Church, Ch. J., and Miller, J., dissenting), that it was the testator's intention that the *corpus* of each daughter's share should be kept entire; and she could not, during her lifetime, use up any portion thereof, but was simply entitled to the income; that the power given to each daughter to dispose of a moiety by will did not enlarge her estate during her life; but that no trust was created in the executors; and that a daughter was entitled to have her share paid over to her, upon giving adequate security that the *corpus* of said share will be kept so that at her death it may pass to those then entitled.

*Livingston* v. *Murray* (4 Hun, 619) modified.

(Argued February 9, 1877; decided February 20, 1877.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment entered upon the report of a referee. (Reported below, 4 Hun, 619.)

This action was brought to obtain a judicial construction of the will of James B. Murray, late of the city of New York, and of a codicil thereto.

The clauses of the will relating to the question presented on this appeal are as follows:

" Secondly. All the rest of my estate, of whatsoever kind, I hereby direct shall be divided equally among all my children; and in case of their death before me, among their lawful issue ; the share of the child or children so dying shall go and be divided among his or her children ; and it is my wish that my executors cause the portion that may belong to my daughters to be secured to them for their separate use during their natural lives, free from the control of any husband with whom they have been or may at any time be intermarried; and in case of their dying without issue, such portion of their said property as may remain at the time of her or their death shall revert to her or their surviving brothers and sisters, or their issue in case of their death, as hereinbefore provided for; subject, however, to the right of such daughter to dispose of one-half of such property by will, in such manner as she may think proper.

" Thirdly. I hereby give, devise and bequeath unto my executors, and to the survivors or survivor of them, all the real estate and chattels real of which I may be seized or possessed at the time of my decease, whether now owned or hereafter acquired by me. To have and to hold to them, their heirs and assigns forever. In trust, nevertheless, to sell and convey the same, or any part thereof, in fee simple or otherwise, at public or private sale, and at such time or times and in such manner as they may deem expedient, and to apply the proceeds thereof in such manner as is herein directed."

The clauses of the codicil are as follows :

" Sixth. Inasmuch as there may be some obscurity in my said last will and testament, as to the title to the portions given to my children, I do hereby give, devise and bequeath to each of my children who may survive me, and to the lawful issue of such as may be dead at my decease (such issue to take only the share of its parent, as in said will provided), one equal portion of whatever property, real, personal or mixed, I may die seized or possessed of or entitled to, and of proceeds of realty sold by my executors, as by my said last will and testament, or as herein authorized (after payment of the debts,

funeral expenses and legacies hereinbefore bequeathed), to my sons in fee simple and absolutely ; to my daughters an estate for life ; remainder to the lawful issue of each respectively, if any such they leave, in fee simple and absolutely subject to the right of my said daughters to dispose of one-half of their share by will, as in my said last will and testament provided, and also subject, however, to the power in trust to sell and convey, given to my executors, or such as may qualify, and the survivors or survivor of them.

" And whereas I have given in and by my said last will and testament to my executors a power in trust to sell and convey my real estate and chattels real, now I do also hereby empower them, or such as may qualify, and the survivors or survivor of them, so long as the same shall not be sold, to rent or lease the same, or any part or parts thereof, on such terms and in such manner as they may, in their discretion, see fit ; and after paying all necessary or expedient repairs or alterations, insurances and charges, taxes and assessments, to divide the net income or balance of the rents among the parties who would be entitled to the proceeds of said realty if sold, or the benefit thereof ; and in case any of my said daughters die without leaving issue, then such portion of her share as she shall not have devised or bequeathed, as herein or therein provided, shall pass to her or their brothers and sisters, or to their issue in case of their death, as in said will provided ; and it is also my intention to, and I do hereby empower my said executors, or such as may qualify, and the survivors or survivor of them, to sell or convey my said real estate, or any part or parts thereof, under the power in said will contained, to such person or persons, and on such credit or credits, and on such terms as they may deem expedient."

The testator died, leaving a large real and personal estate. The referee found that under these clauses of the will and codicil it was the duty of the executor to invest the respective shares of the daughters in permanent securities, and to pay the interest or income to them respectively as tenants for life.

Upon motion of plaintiff to be relieved from his duties as

trustee of the daughters, a referee was appointed to take proof of the facts. Upon the coming in of his report judgment was entered adjudging, among other things, that the residuary estate be divided into seven parts, four of which were to be held in trust for the four daughters of the testator; that the resignation of plaintiff as trustee be accepted; that the New York Life Insurance and Trust Company be appointed trustee in his place, and that the executor transfer to said company the said four shares.

*Joseph H. Choate* for the appellant. The executors did not hold the shares of the daughters in trust. (1 R. S., 679, § 60; 1 R. S. [Edm.'s ed.], 678, §§ 58, 59.) The testator's daughters took equally with his sons an absolute legal estate in their shares of his property. (Hill on Trustees, 74; *Pierson* v *Garnet*, 2 Bro. Ch. R., 46; *Jackson* v. *Bull*, 10 J. R., 19; *Jackson* v. *Robins*, 15 id., 169; 16 id., 584; *Ide* v. *Ide*, 5 Mass., 500; *Sprange* v. *Barnard*, 2 Bro. Ch. Cas., 585; *Bland* v. *Bland*, 2 Cox, 349; *Atty.-Genl.* v. *Hall*, 8 Vin. Ab., 103; 1 J. & W., 158, n.; 3 Kern., 285; *Ross* v. *Ross*, 1 J. & W., 154; *Helmer* v. *Shoemaker*, 22 Wend., 137; *Annin's Exr.* v. *Vandoren*, 1 McC. [N. J.], 135.) Even if the daughters took only a life estate, they are entitled to receive their shares and manage them in their own way. (2 Redf. on Wills, 476, § 28, 478, § 29; *Homer* v. *Shelton*, 2 Metc., 194, 198, 205; *De Witt* v. *Schoonmaker*, 2 J. R., 243; *Trustees, etc.,* v. *Kellogg*, 16 N. Y., 83.)

*John K. Porter* for the respondent. It was the testator's intent to make a distinction between his sons and his daughters as to the title by which they should hold their shares of his estate. (*Savage* v. *Burnham*, 17 N. Y., 533, 572.) The testator created a valid power in trust in his executors, the title to his property vesting in his heirs, subject to the lien of the executors to protect the remainders. (1 R. S., 729, § 56; 57 id., 732, § 81; id., 725, §§ 32, 33; id., 735, § 107; *Tyson* v. *Blake*, 22 N. Y., 558, 562; *Tucker* v. *Tucker*, 1 Seld.,

413; *Martin* v. *Martin*, 43 Barb., 184; 4 Kent, 319; 41 L.
J. Ch., 141, 536; *Pennock* v. *Pennock*, L. R., 13 Eq., 144;
*Jackson* v. *Robins*, 16 J. R., 588; Revisers' notes, 5 Edm's
Stat., 313; *Terry* v. *Wiggins*, 2 Lans., 275; 47 N. Y., 516;
*Van Nostrand* v. *Moore*, 52 id., 12; *Taggart* v. *Murray*,
53 id., 238.) The provisions of the will and codicil created
a trust. (*Fisher* v. *Fields*, 10 J. R., 505; *Wood* v. *Burnham*,
6 Paige, 519; 26 Wend., 9; 1 Atk., 607; 1 Bro. Ch. R., 76;
Edm.'s note; *Oates* v. *Cooke*, 3 Burr., 1684; *Trent* v. *Han-
ning*, 1 B. & P. N. R., 116; 10 Ves., 495; 7 East, 95; *Doe*
v. *Woodhouse*, 4 T. R., 89; *Ex parte Wynch*, 5 De G., McN.
& G., 221; *Newill* v. *Newill*, L. R., 7 Ch., 257; *Combe* v.
*Hughes*, L. R., 14 Eq. Cas., 415; *Turner* v. *Sargent*, 17
Beav., 519; *Watson* v. *Bonney*, 2 Sandf., 415; 1 Jarm. on
Wills [3d ed.], 835; 1 Watson Comp. Eq., 374; *Goulder* v.
*Camm*, 1 De G., F. & J., 146; 1 R. L., 181, 372, § 1; 1 R.
S., 729, §§ 60, 63; Wil. Eq. Jur. [2d ed.], 225; *Smith* v.
*Brown*, 35 N. Y., 87, 89; *Meserole* v. *Meserole*, 3 T. & C.,
198; *Bruner* v. *Meigs*, 6 Hun, 213; *Craig* v. *Craig*, 3 Barb.
Ch., 97.) A trust having been created, the appellant could
not call for a conveyance of the trust property. (1 R. S., 730,
§ 65; *Hone* v. *Van Schaick*, 7 Paige, 231; *Salters* v. *Pruyn*,
5 Alb. L. J., 218.) Even if no trust was created, the contin-
gent remainders to the issue who may survive the daughters
would prevent the court from delivering the principal to the
daughters. (*Buttanshaw* v. *Martin*, H. P. V. Johnson's R.,
95; *Watson* v. *Bonney*, 2 Sandf., 405; Wil. Exrs., 389;
*pear* v. *Tinkham*, 2 Barb. Ch., 214; *Trustees, etc.*, v. *Kel-
ogg*, 16 N. Y., 90; *Tyson* v. *Blake*, 22 id., 563.)

EARL, J. The sole complaint made by the appellant of the
decision below is, that it ordered her share to be paid and
delivered to the New York Life Insurance and Trust Company,
instead of to her. Her claim is that she was entitled to such
share absolutely, and if not, that she was entitled to have it
paid and delivered to her either with or without security
therefor on her part.

The will and the codicil together constitute the last will and testament of the testator, and to arrive at his intention they must be considered and construed together.

It is undisputed that a testator may in form make an absolute bequest of personal property to one, and then limit it over upon his death to another. The limitation in such case is not void for repugnancy, but qualifies the bequest.

It is, also, undisputed that in such a case a testator may provide that his executors shall take the property in trust, and hold and manage it for the benefit of the *cestui que vie*, and then deliver it to the one entitled to the remainder, and that such a trust may be created by express words or implied from all the terms and provisions of the will.

It is not very important to determine the precise meaning of the will standing alone, as it is superseded by the codicil so far as that speaks plainly.

It is clear that the share of each daughter was to be kept entire during her life. Under the will the property was to be divided into equal shares, and each daughter was to have one share. Such share was to be secured to her separate use during her life, free from the control of any husband, and if she died without issue, she had the right to dispose of one-half of the property constituting her share by will. If the will contained nothing more it would be clear that the *corpus* of each share was to be kept, and that each daughter was simply to have the use of her share during her life. But there is the further provision that in case any daughter died without issue, "such portion of her property as may remain at the time of her death," should go to her surviving brothers and sisters, subject to her right to dispose of one-half by will. It is doubtful what the testator meant by the words quoted. He may have meant such portion as might remain after all diminution from losses, bad investments or other misfortune; or he may have meant (and such is the claim of the appellant) that each daughter might use so much of her share as she chose to, and then that what remained should go over. If the latter was his meaning, then each daughter would take an

absolute estate in the property as the power to use up the *corpus* implies an absolute ownership thereof, repugnant to and destructive of the limitation over after her death. (Hill on Trustees, 74; *Pierson* v. *Garnet*, 2 Bro. Ch. Rep., 46; *Bland* v. *Bland*, 2 Cox, 349; *Jackson* v. *Bull*, 10 J. R., 19; *Jackson* v. *Robins*, 15 id., 169; *Helmer* v. *Shoemaker*, 22 Wend., 137; *Annin's Exr.* v. *Vandoren's Admr.*, 1 McCarters [N. J.], 135; *Ide* v. *Ide*, 5 Mass., 500.) But the codicil makes it entirely clear that the *corpus* was to be kept entire during the life of each daughter. The sixth clause of the codicil purports to have been inserted therein, to make clear any obscurity in the will or to the title to the property given to the children. The testator there divides his property into equal portions, and gives to each of his sons one portion absolutely, and to each of his daughters an estate for life in one portion. He then gives the remainder, that is, the same portion after the termination of the life estate, to the daughter's issue absolutely, subject to the right of the daughter to dispose of one-half of her share by will, and in case she should die without issue, then such portion of her share as she had not disposed of by will is to go to her brothers and sisters. All these provisions show clearly that it was the intention of the testator that the *corpus* of each share bequeathed to the daughters for life should be kept entire, and that unless she elected to dispose of one-half or a less portion by will, that the whole of the share should go to those entitled in remainder, and in case of such election, that the portion of the share not thus disposed of should go to the same persons. These provisions of the codicil could not have effect if the daughters could, during their lives, use up the whole or any portion of the *corpus*. The construction contended for by the appellant would defeat the whole scheme and purpose of the will, and should not be adopted unless the language used, under the rules of law applicable, plainly requires it, and that it does not is sufficiently clear.

The power of each daughter to dispose of one-half of her share by will, does not enlarge her estate during her life. The

failure to exercise the power, in the mode specified, would leave the property, unaffected by the power, to pass over to those entitled in remainder. (4 Kent, 319 ; *Jackson* v. *Robins*, 16 J. R., 588 ; *Terry* v. *Wiggins*, 47 N. Y., 512 ; *Taggart* v. *Murray*, 53 id., 233 ; *Pennock* v. *Pennock*, L. R., 13 Eq., 144.)

It is claimed on the part of the plaintiff, that the clause in the will which requires the executors to secure the portion of each daughter to her separate use for life, free from the control of any husband, in connection with the other provisions of the will, implies a trust in the executors to take and hold the property and pay or apply the income for the benefit of the daughters. This is probably so. But I think this clause is modified or abrogated by the codicil. When the codicil was executed the testator, upon better advice or information, or upon more mature reflection, may have concluded that a trust expressly to protect the property of his daughters against their husbands was unnecessary, and that he might rely upon the statutes of the State to do that. He then, defining the title each legatee was to take in direct language, gives each daughter an estate for life in her portion, and then after death gives it absolutely to those taking in remainder. He uses no language evincing an intention to create any trust. It is like the bequest of a general residuary estate to A for life with remainder to B after A's death, in a will in which executors are appointed. In such a case there is no other trust than the law creates and vests in the executors. They take the legal title to all the personal property. They must convert it into money, pay debts, expenses and specific legacies if any, and as they are bound to execute all the provisions of the will, they are charged with a duty as to both A and B. They must give to A what belongs to him, and then to B what belongs to him. They cannot discharge their duty by delivering the whole property to A and thus imperiling the rights of B. (*How* v. *Earl of Dartmouth*, 7 Ves., 137.) Judge Willard, in his work on executors, page 389, lays down the rule as follows : " When there is a general bequest to one for life

and remainder over, the executor should convert the whole into money and invest it in permanent securities. The interest only is payable to the tenant for life and on his death the residue belongs to the remainder-man." Similar language was used by the chancellor in *Spear* v. *Tinkham* (2 Barb. Ch., 211), *Clark* v. *Clark* (8 Paige, 152), *Covenhoven* v. *Shuler* (2 id., 122), and in other cases. But the same result is reached in another way. When the remainder-man is willing and able to give security for the fund, it has been considered just that he should receive it so that he could manage it and reap all the income he could make, free from the charge of commissions by an executor or trustee. In such case care should be taken to secure the *corpus* of the fund or estate for the remainder-man, and the security taken should be adequate for that purpose.

In *Tyson* v. *Blake* (22 N. Y., 558) the testator gave to his granddaughter a share of his residuary estate, and provided that if she should die without issue, it should at her death go over to persons named ; and it was held that the granddaughter was entitled only to the use of her share during her life, and that it could be paid to her only upon her giving adequate security for it. (See, also, *Homer* v. *Shelton*, 2 Met., 194, 206, 218 ; *Covenhoven* v. *Shuler*, *supra*, p. 132 ; *Webber* v. *Webber*, 1 Sim. & Stu., 311.)

It follows, from these views, that the appellant was entitled to have her share paid to her upon giving adequate security that the *corpus* of the estate should be kept so that at her death it may pass to those who will then be entitled to it.

The judgment below must, therefore, be so modified as to authorize the appellant at any time to apply to the Supreme Court to have the fund delivered to her upon her giving security as above-mentioned, and the judgment as thus modified must be affirmed, and the costs of both parties in this court must be paid out of the estate in controversy.

All concur, except CHURCH, Ch. J. and MILLER, J., dissenting; ANDREWS, J., absent.

Judgment accordingly.