it appears that their forms and requirements have been complied with in all respects in the present case. It is conceded that the certificate in question has been signed by several hundred more names than is required by law to make it effective, as the statute has been construed in the case of People ex rel. Hotchkiss v. Smith et al., 99 N. E. 568, recently decided by the Court of Appeals, and not yet officially reported.

No attack has been made upon the genuineness of any signature among all those contained upon the certificate, except in a single instance. When a petitioner attacks the validity of a petition making an independent nomination for office, the court or justice can exercise only such power as is conferred by statute. Schieffelin v. Britt, 150 App. Div. 568, 135 N. Y. Supp. 62. I find nothing in the statute to justify a determination that a certificate is invalid when, as here, it has been signed by the requisite number of electors of the independent body, and when all the forms required by law in respect to such certificates have been complied with, and the certificate has been filed in the proper office within the time required by law. If the duly constituted party authorities of the organization in question had, in pursuance of law, nominated a candidate for the office in question, so that conflicting claims were made with respect to the right to use the emblem and the right to have the name upon the ticket, the rules of the organization with respect thereto would be entitled to weight, and quite a different question would have been presented for determination. Nothing appears here that would justify me under the law in declaring the certificate invalid, and thus deny to the electors of the so-called Progressive Party, who have joined in the certificate in question, the opportunity of voting for the candidate of their choice upon the ticket and under the emblem of their party, after they have fully complied with the provisions of the statute with respect to independent nominations.

For these reasons, briefly stated, the prayer of the petitioners should be denied.

---

### In re ROWLAND et al.

(Supreme Court, Appellate Division, Second Department. November 15, 1912.)

1. EXECUTORS AND ADMINISTRATORS (§ 485*)—SETTLEMENT OF ACCOUNT—ALLOWANCE—FEES OF WITNESSES.

    Executrices were not entitled, on accounting proceedings, to an allowance for moneys paid to expert witnesses in an attempt to sustain their prior excessive payments to counsel.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2068; Dec. Dig. § 485.*]

2. EXECUTORS AND ADMINISTRATORS (§ 298*)—CONSTRUCTION—LIFE ESTATE IN FUNDS—CUSTODY.

    Under a will bequeathing to one of two persons appointed as executrices a life estate in the income of a certain sum of money, remainder to her descendants, such life tenant was entitled to possession of the fund without security though the will did not expressly so provide, where from the scheme of the will and the surrounding circumstances, including

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

the facts that the residue of the estate was given under an express trust for certain life tenants with remainder over to specified beneficiaries, that she had lived with testatrix for a number of years, and already had in her possession a large sum belonging to testatrix, and that she was a woman of advanced age with adult children, it appeared that such was the testatrix's intent.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1217; Dec. Dig. § 298.*]

Appeal from Surrogate's Court, Suffolk County.

Judicial settlement of the account of Laura E. Rowland and another, as executrices. From the decree the Brooklyn Trust Company, as trustee, and another appeal. Decree modified and affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

William N. Dykman, of Brooklyn (Francis L. Archer, of Brooklyn, on the brief), for appellant Brooklyn Trust Company, trustee.

Emile Dreyfus, of New York City, for appellant Richard M. Henry, special guardian.

Edward P. Lyon, of New York City, for respondent Laura E. Rowland, executrix.

Lawton B. Garside, of New York City, for respondent Florence D. Bond, executrix.

CARR, J. This is an appeal from a decree of the Surrogate's Court of Suffolk county, which settled the account of Laura E. Rowland and Florence D. Bond, as executrices of the last will and testament of Adeline Garrison, deceased. There are two questions presented for decision on this appeal. The Brooklyn Trust Company, as trustee of two-thirds of the residuary estate, objected to certain charges made by the executrices for counsel fees on the probate of the will and administration of the estate. The special guardian for an infant contingent remainderman joined in this objection, and he likewise objected to a payment made by the executrices to Laura E. Rowland as life tenant of a cash sum equal to one-third of the residuary estate, without having taken any security from said Laura E. Rowland for the protection of those interested in the corpus of the fund bequeathed to said Laura E. Rowland for her life. The estate was a large one, aggregating in value over $1,000,000. It consisted of several pieces of real property, all of which were specifically devised by the will, and a large amount of personal property amounting to $990,000, consisting of cash on deposit in various banks, listed securities, and bonds and mortgages. The amount of commissions payable to each of the executrices exceeded the sum of $10,000. When the will was offered for probate, there was a contest before the Surrogate's Court in Suffolk county. A copy of the testimony taken in the probate proceedings is returned in the record on this appeal, in order that this court may have an opportunity to ascertain the extent of the services rendered by the attorney for the proponents in that proceeding.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The executrices found themselves unable to agree on one lawyer or a firm of lawyers as counsel for the estate, and each engaged her own attorney. Each of these attorneys was paid the sum of $10,000 for his professional services on the probate proceedings and the administration of the estate. The Brooklyn Trust Company, as trustee, claimed that the amount so paid to each of these attorneys was very largely excessive, and asked that the executrices be surcharged with the amount so paid to whatever extent it was above the reasonable value of the services rendered. The probate proceedings were not protracted, no serious question of law arose thereon, and the contestants failed absolutely to make out even a prima facie case as to the only question they attempted to litigate. The nature of the estate was such as to require care and exactness in its administration. There were practically no debts of the decedent. Both of the executrices were women of no business training; Mrs. Rowland being about 62 years of age, and Mrs. Bond a little above 40. The respective attorneys submitted to the Surrogate's Court a transcript of their books showing the services rendered to their clients. It is quite apparent that a very large, if not the greater, part of such services, was in the nature of assistance to the executrices in the performance of purely executorial duties, for which the commissions payable were generous compensation. The attorneys, however, claimed that they made no charge for such services as were merely incidental to the discharge of executorial duties, and that the amounts paid to them for counsel fees covered only such services as were purely in the nature of necessary counsel work. Experts were produced before the surrogate on behalf of the executrices and the contestants in regard to the reasonable value of the services rendered by the attorneys. There was a wide difference between the estimates made by the respective expert witnesses. The surrogate sustained the payment made by the executrices, as being reasonable in amount for the services rendered by the attorneys. It would appear that if each of these attorneys had been paid the sum of $7,500, instead of $10,000, they should have been very liberally compensated, considering the nature of the work done. The surrogate should not have allowed any payment to either of these attorneys in excess of the sum of $7,500, and his decree should be so modified as to surcharge the executrices with the sum of $5,000 as an overpayment to both attorneys. The executrices paid out to counsel on the contest of their accounts the sum of $2,500, distributed between two counsel, each receiving $1,250, and likewise paid about $600 to the expert witnesses whom they produced to support their claim for an allowance of the disputed payments for counsel fees.

[1] If the executrices have overpaid their respective counsel, then they should not be allowed the moneys which they paid to expert witnesses on the accounting proceedings in an attempt to sustain their prior payments to counsel, and their account should be surcharged to that extent also. They have credited themselves with payment of additional counsel fees of $1,250 to each of two counsel who repre-

sented them on the contest in the accounting proceedings. The objections made by the special guardian on the accounting as to the payment over to Mrs. Rowland of the corpus of the fund in which she had a life interest, justified the services of counsel for executrices, but the sum of $1,250 for each of said counsel was excessive, and should be reduced to $750 for each, and the account surcharged accordingly.

[2] This leaves for our consideration the question of the propriety of the decision of the Surrogate's Court which overruled the objection of the special guardian as to the custody of the fund set apart for the benefit of Mrs. Rowland during her lifetime. While there are no express words in the will which direct the payment to Mrs. Rowland of the corpus of the fund in question, it is contended that the general scheme of the instrument shows plainly that such was the intention of the testatrix. The will of the testatrix appointed the respondents Mrs. Rowland and Mrs. Bond as executrices. It contained a number of specific devises and some general legacies. It provided for a distribution of the residue of the estate by two separate provisions. The first of these provisions (the ninth clause of the will) was in form as follows:

"I give, devise and bequeath unto said Laura E. Rowland, one-third of the rest, residue and remainder of my estate less the sum of ninety-two ＊ ＊ ＊ ($92,000) dollars (she having already in her possession the sum of forty-six thousand ($46,000) dollars, for and during the term of her natural life, and at her death to her descendants in equal shares per stirpes; and in the event of the death of said Laura E. Rowland, without leaving issue, I give, devise and bequeath the same to the heirs of said Sarah Garrison Sneden in equal shares per stirpes."

Then followed another clause in which the decedent gave to the Brooklyn Trust Company the residue of the estate under an express trust for the benefit of Leonard Bond and Laura Bond during their lives, with further remainders over to specified beneficiaries on the deaths of those having the life interest. It was the plain intent of the testatrix that her general residuary estate was to be distributed in shares which should be equal one-third shares, two of which were given under an express trust to the Brooklyn Trust Company for the benefit of the Bonds, and one of which was set apart for the benefit of Mrs. Rowland and her "descendants" or "issue." The interest of Mrs. Rowland as so created was a life interest in the income of the fund, and did not carry with it any right to consume any portion of the principal. It is the general rule that, under such circumstances, the life tenant is not entitled to the possession of the corpus of the fund, consisting of moneys or securities, without giving adequate security for the protection of the remaindermen, unless the will expressly provides that the life tenant shall have possession, or unless the scheme of the will, viewed in the light of surrounding circumstances, indicates plainly that the testator intended that the life tenant should have such possession, in which event the life tenant should be considered as a trustee for the benefit of the remaindermen and subject to supervision by a court of equity during the continuance of the life estate. Matter of McDougall, 141 N. Y. 21, 35 N. E. 961; Livingston v. Murray,

68 N. Y. 485; Smith v. Van Ostrand, 64 N. Y. 278. And, where the will expressly directs that the life tenant shall have possession of the fund, the executors cannot as a matter of right insist upon security before paying it over (Matter of Ungrich, 48 App. Div. 594, 62 N. Y. Supp. 975, affirmed 166 N. Y. 618, 59 N. E. 1131), and also where the will, without express provision as to the custody of the fund, provides that the life tenant may consume the whole or a portion thereof, then the executors may discharge themselves by paying over the fund to the life tenant, without security (Leggett v. Stevens, 185 N. Y. 70, 77 N. E. 874); and thus when the scheme of the will shows that it was contemplated, though not expressly provided, that the life tenant should have possession of the fund, then a payment over by the executors may be made without taking security. (Matter of Hamlin, 141 App. Div. 318, 126 N. Y. Supp. 396). Now in the will before us there is no express provision that the life tenant shall have possession of the fund, nor was she given the right to consume any part of the principal. Therefore the propriety of the payment over to her of the principal sum, without security, can be justified only on the ground that the scheme of the will discloses plainly that the testatrix so intended. On this question it is permissible to view the will in the light of the circumstances attending its making. Mrs. Rowland had lived with the testatrix for a number of years. She had already possession of the sum of $46,000 belonging to the testatrix. She was a woman over 60 years of age, and she had three living children of adult age. When the testatrix provided for the Bond beneficiaries, she purposely chose the mechanism of an express trust, by which neither her executrices nor the Bond beneficiaries should in any way have the custody or control of the fund so set apart during the running of the Bond life estates. The failure of the will to make any express trust with regard to the Rowland fund is therefore very significant. It is apparent that the testatrix had great confidence in Mrs. Rowland, and that she anticipated the fact that in all human probability the life estate would run but for a few years, as the life beneficiary was a woman past 60 years of age, and that in all reasonable assurance the remaindermen who would take the fund ultimately would be found among the then adult children of the life tenant. It is scarcely probable that the testatrix intended that her executrix, Mrs. Bond, who was expressly excluded from the custody and control of the fund held for her own benefit, should have a right of custody and control over the fund held for the benefit of Mrs. Rowland. Considering the scheme of the will and the surrounding circumstances, it seems to us most probable and reasonably plain that the testatrix intended that Mrs. Rowland should have the possession of the fund created for her life benefit, and that she should be the implied trustee of said fund, just as the Brooklyn Trust Company was made the express trustee of the other funds. All the parties who in reasonable probability shall succeed to the remainder of the Rowland fund were before the Surrogate's Court and have acquiesced in his decree which approved the act of the executrices in making the payment in question. The infant who now appeals may

become an actual remainderman in the future, but the probability of such an event is most remote.

We are of opinion, therefore, that the decree of the surrogate should be modified by disallowing the payments for counsel, fees, etc., to the extent hereinbefore indicated, and that the account of the executrices should be surcharged accordingly, and that, as thus modified, the decree should be affirmed, with costs and disbursements to the appellant the Brooklyn Trust Company, and to the special guardian, payable out of the estate. All concur.